**AMERICAN TRADING TRANSPORTA-TION COMPANY, INC., et al., Appellants**

v.

**UNITED STATES of America, et al.**

**No. 87–5125.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 6, 1988.

Decided March 15, 1988.

---

Anne E. Mickey, with whom Robert J. Blackwell, Washington, D.C., was on the brief for appellants. Jeffrey R. Masi, Washington, D.C., also entered an appearance for appellants.

George P. Williams, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., and James F. Ford, Maritime Admin., Washington, D.C., were on the brief for federal appellees. Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., also entered an appearance for federal appellees.

Michael Joseph, Thomas L. Mills, Washington, D.C., and Marie Louise Hagan were on the brief for appellees, American Shipping, Inc., et al.

Before: GINSBURG, BORK,\* and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Appellants American Trading Transportation Co., *et al.* (American Trading) challenged, in an action for declaratory and injunctive relief, a Maritime Administration (Marad) dispensation permitting a subsidized vessel, the *Beaver State*, to make two voyages in the domestic trade during March and April 1986. On cross motions for summary judgment, the district court affirmed Marad's disposition. *American Trading Transp. Co. v. United States*, 659 F.Supp. 354 (D.D.C.1987). We vacate the district court judgment; Marad's decisional

---

\* Judge Bork was a member of the panel but did not participate in the decision of this case.

pronouncement, we hold, failed to measure up to the reasoned explanation standard this court described in *Independent United States Tanker Owners Comm. v. Lewis*, 690 F.2d 908 (D.C.Cir.1982) (hereinafter *ITOC*).

## I.

The Merchant Marine Act of 1936, 46 U.S.C. § 1101 *et seq.* (1982 & Supp. III 1985) (the Act), contemplates two classes of U.S.-flag ships.[1] The domestic trade (traffic between ports in the United States) is reserved for U.S.-flag vessels built in the United States. *See* 46 U.S.C. § 883 (1982). That restriction serves to protect unsubsidized ("Jones Act") ships from low-cost foreign competition. U.S.-flag ships destined for the foreign trade are eligible for subsidies which offset construction costs (construction differential subsidies—CDS) and operating expenses (operating differential subsidies—ODS) that are higher in the United States than overseas; these vessels are thus able to compete with foreign-flag ships.[2]

Subsidized vessels may enter the domestic trade only under the conditions set forth in § 506 of the Act (46 U.S.C. § 1156): the Secretary of Transportation may "consent in writing" to a temporary transfer not to exceed six months in one year, if he determines that the transfer is "necessary or appropriate to carry out the purposes of this Act." *Id.* A transferred ship must repay a pro rata share of its CDS and may not receive ODS during the waiver period. *Id.* Under § 805(a) (46 U.S.C. § 1223(a)), affiliates of an operator engaged in the domestic trade, whether the domestic engagement is permanent or only temporary pursuant to § 506, must obtain the Secretary's written permission to continue receiving ODS during the period of domestic operation. The Secretary of Transportation has delegated to Marad authority to grant these waivers.

On March 12, 1986 American Shipping, Inc. (ASI), operator of the *Beaver State*,

applied for permission under § 506 to undertake up to four voyages from Valdez, Alaska to the West Coast, beginning about March 20–23, 1986. SPC Shipping, Inc., a subsidiary of SOHIO, stated in support of ASI's application that SPC had an urgent short term need for a vessel of that class (90,000 DWT), and that no suitable unsubsidized tanker was available between March 15 and March 25. Two of ASI's affiliates, Aquarius Marine and Atlas Marine, both operators of ODS-subsidized tankers, applied at the same time for permission under § 805(a) to continue receiving ODS assistance.

Marad published a *Federal Register* notice soliciting comments on the ASI, Aquarius, and Atlas applications by March 20, 1986. 51 Fed.Reg. 9134 (1986). Eight operators of unsubsidized ships protested, including the six appellants here. No protestor identified any unsubsidized tanker of the specified size available before late April. On March 24, 1986 Marad granted § 506 permission for two voyages by the *Beaver State*. Concerning § 805(a), the agency determined that inasmuch as no suitable unsubsidized vessels were available to meet SPC's need, no party had an interest necessitating a hearing, and granting the applications would spark no unfair competition. Marad allowed Aquarius and Atlas to receive ODS assistance without abatement. The *Beaver State* completed the two authorized voyages between March 26 and April 27, 1986.

American Trading renewed its protests before the district court in a complaint filed April 3, 1986. The court, ruling on summary judgment applications, concluded that Marad's dispensation was not "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law," and therefore affirmed the agency action. *American Trading Transp. Co.*, 659 F.Supp. at 362. American Trading appealed.

## II.

■ The heart of American Trading's § 506 complaint is that Marad failed to look

---

**1.** All U.S.-flag ships must be owned by United States citizens and staffed by domestic officers. 46 U.S.C. §§ 12102, 7102 (Supp.III 1985).

**2.** *See* 46 U.S.C. §§ 1151 *et seq.,* 1171 *et seq.* (1982).

behind shipper SPC's assertions that SPC had an urgent need for tanker capacity on March 20–23, 1986. SPC may have artificially generated the asserted need by manipulating its own fleet and/or the required loading dates, American Trading urges. American Trading also charges that Marad should not have embraced without pause for inquiry SPC's generalized claim that bad weather and repairs caused the emergency. More conscientious investigation in this case might have revealed, American Trading suggests, that the proposed voyages could just as well have been made in late April, when domestic fleet tankers of the specified size became available. The unsubsidized operators further claim entitlement to a hearing under § 805(a), and they challenge the agency's determination that the *Beaver State* permission would not spark unfair competition.

Insofar as appellants complain about Marad's explanation of its decision, their position on the § 506 question is well-founded. In *ITOC*, 690 F.2d 908, this court reviewed a Marad decision authorizing the permanent transfer of a VLCC (very large crude carrier) tanker into the domestic service. The *ITOC* panel identified two judicial responsibilities: the court was obliged to review Marad's substantive decision to ensure that it was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; it was also the reviewing court's mission to examine "the procedures MarAd employed in reaching its decision to ensure that they comply with the APA and any applicable statutory or constitutional requirements." *Id.* at 922. The *ITOC* court concluded that the agency's obligation to produce a record adequate to serve as a basis for judicial review would, in the context of an informal adjudication,[3] mandate some minimum procedures for notice, comment, and a statement of reasons.[4] An adequate statement of reasons would entail "canvassing the competing comments received and explaining why it resolved the differences as it did." *Id.* at 923.[5]

Marad issued its decision in the present case after notice and an opportunity for comment, but the agency produced no statement of reasons accounting for its § 506 determination. The permission letter of March 24 merely repeated the statutory language:

> [Marad has d]etermined pursuant to section 506 of the Merchant Marine Act, 1936, as amended (Act), that the transfer of the BEAVER STATE for approximately one month to the Valdez/U.S. West Coast trade is necessary or appropriate to carry out the purposes of the Act.

Letter of Permission from G.P. Stamas to E.P. Miller (Mar. 24, 1986), *reprinted in* Joint Appendix (J.A.) 40–42. At oral argument counsel for the agency suggested that a Telex from SPC to Marad dated March 21, 1986, J.A. 35–36, could be regarded as the basis for Marad's decision. Post hoc explanation by appellate counsel, however, is not an acceptable foundation for review of agency action. *Burlington Truck Lines v. United States*, 371 U.S.

---

3. We note, as did the *ITOC* panel, that Marad may elect to make waiver decisions on the basis of properly promulgated rules, or by informal adjudication. "[T]he choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *SEC v. Chenery*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947), *quoted in ITOC,* 690 F.2d at 917.

4. The requirements of notice and comment must be tailored to fit the exigencies of each application. Here interested parties were allowed three days, from the publication of the Federal Register notice on March 17, 1986 to the close of business on March 20, in which to comment, petition for leave to intervene, and/or request a hearing. In the circumstances of this case, we believe that brief span was adequate.

5. The *ITOC* case involved Marad's consideration of an application for permanent transfer into the domestic trade. This court found that Marad had failed to provide interested parties the opportunity to comment on the data actually underlying its decision, and that the agency had not produced an adequate explication of its reasoning. *ITOC,* 690 F.2d at 924–25. The court remanded the case for Marad's full reconsideration of the transfer decision, directing Marad to conform to the requirements of notice, comment, and explanation regarding whatever decision it reached. *Id.* at 931.

156, 168–69, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962). Furthermore, the proffered "explanation" renders all the more comprehensible appellants' fears that Marad might be prepared to accept, as an act of faith, the shipper's plea of necessity.[6] In sum, Marad has not supplied the statement of reasons called for by *ITOC*. We are therefore not positioned to review intelligently the § 506 determination Marad made.

An adequate explanation of the waiver decision necessarily would have addressed appellants' concerns about the authenticity of SPC's "emergency." Marad should have spelled out the factors on which it relied in concluding that the need was genuine, not artificial, including the factors that persuaded it not to make independent inquiries into the strength of SPC's claims of exigency. We do not suggest that the agency must abide protestors' efforts to protract or delay in cases of this sort. On the contrary, we are satisfied that adherence to the procedural requirements of notice, comment, and reasonable *explanation* should suffice to preclude perfunctory decisionmaking.

The § 805(a) decisions, similarly, are inadequately explained. Marad provided a modicum of explanation for the denial of appellants' request for a hearing:

> [It is d]etermined that no party has an interest within the meaning of section 805(a) in the first two voyages, which would necessitate a hearing, inasmuch as no suitable competitive Jones Act vessels are available to meet the compressed time requirements for the transportation need of the shipper.

Letter of Permission, J.A. 40. That explanation might have been adequate had it rested on a prior reasoned determination of the genuineness of the asserted urgency, *i.e.,* "the compressed time requirements." As it stands, however, the statement is

little more than an unsupported recitation of ultimate facts. *See ITOC,* 690 F.2d at 924. Nor was any explanation provided for the finding of no unfair competition:

> [Marad f]ound, pursuant to section 805(a) of the Act that the employment of the BEAVER STATE will not result in unfair competition to any person, firm or corporation operating exclusively in the coastwise or intercoastal service, nor will it be prejudicial to the objects and policy of the Act[.]

Letter of Permission, J.A. 41. It is plausible to suppose that this decision, like the one under § 506, was based on the agency's finding that no unsubsidized vessels were available during the period in question. Again, however, Marad should not have rested on repetition of the words of the statute, but should have stated, concretely, the rationale for its rulings. *See ITOC,* 690 F.2d at 924.

### III.

■ The *Beaver State's* spring 1986 voyages in the domestic trade are long over, but the case does not thereby escape our review. The waivers challenged here fall squarely within the class of "short-term [agency] orders, capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). This well-established exception to mootness doctrine comes into play when

> (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

*Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975). The first requirement clearly is satisfied here: the two voyages consumed a total of

---

6. The district court remarked that it is not the business of Marad "to second-guess the decisions of the oil companies. . . ." *American Trading Transp. Co.,* 659 F.Supp. at 361. This statement bears substantial qualification. While it is not Marad's task "to regulate the production and flow of oil in and from Alaska," *id.,* it surely is Marad's obligation to exercise its decision-making functions in a reasoned manner, which may

33 days. *See supra* p. 423.[7] Furthermore, it is a virtual certainty that Marad will continue to approve short-term waivers permitting the entrance of subsidized vessels into the domestic trade. Should Marad continue to grant such waivers without explanation, appellants will remain exposed to the risk that the agency will simply accept, on faith, the waiver applicant's assertion of need, to the detriment of those whose unsubsidized vessels service the domestic trade.[8]

American Trading initially requested that this court return the case to Marad for amplification of its reasoning, as is normally done when an agency fails adequately to articulate the basis of its decision. At oral argument on January 6, 1988, however, counsel restated American Trading's request: "We're not asking for reconsideration of this case. We're asking that this court require the Maritime Administration to institute some sort of procedures to test the authenticity of the claim of need." We take that statement to be a request for declaratory relief alone.

The atypical posture of requests to review short-term agency orders "capable of repetition" mandates prospective declaratory relief in appropriate cases. In *Batterton v. Marshall*, 648 F.2d 694 (D.C. Cir.1980), this court found justiciable (because capable of repetition, yet evading review) "only Maryland's claim that future modifications of the statistical methodology must be subject to notice and publication"; consequently, the court ordered prospective relief. *Id.* at 711. *See also Golden Holiday Tours v. CAB*, 531 F.2d 624, 626 (D.C. Cir.1976): "Since the subject acts of this controversy are all in the past, no injunction could be framed to give relief from the alleged breach of discretion. Rather the

remedy sought is in the nature of a declaration that the action taken was wrongful, in hopes that that will deter similar acts in the future." Presented with analogous circumstances here, we again decline to remand where that disposition would serve no useful purpose.[9] We therefore vacate the district court judgment, and declare that it is Marad's obligation to conform to the requirements of notice, comment, and explanation, as set forth in *ITOC*, in all future decisions on applications for temporary waivers of subsidized vessels into domestic service.

*It is so ordered.*

---

indeed require that agency to look behind the assertions of oil companies.

7. *See Atlantic Richfield Co. v. United States*, 774 F.2d 1193, 1198–99 (D.C.Cir.1985) (six month permit expired before district court could rule on motions for summary judgment).

8. We need not hypothesize that Marad will grant future waivers to the *Beaver State*, though it might do so. "[A] reasonable expectation of recurring injury to the same complaining party"

satisfies the second prong of *Weinstein*, even though the harm may be caused by agency action directed at different regulated entities. *See SEC v. Sloan*, 436 U.S. 103, 110, 98 S.Ct. 1702, 1707, 56 L.Ed.2d 148 (1978).

9. In *ITOC*, as described *supra* note 5, remand was appropriate because the order under review granted a *permanent* waiver into the domestic trade.