The GUARDIAN MOVING & STORAGE
COMPANY, INC., Petitioner,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of Amer-
ica, Respondents.

No. 91–1259.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 9, 1991.

Decided Jan. 14, 1992.

Robert J. Brooks, Washington, D.C., for petitioner.

Theodore K. Kalick, Atty., I.C.C., with whom Robert S. Burk, Gen. Counsel, and Ellen D. Hanson, Sr. Associate Gen. Counsel, I.C.C., and James F. Rill, Asst. Atty. Gen., and Robert B. Nicholson and John P. Fonte, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents.

Before MIKVA, Chief Judge, and EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The Interstate Commerce Commission (the "ICC" or "Commission") granted emergency temporary authority ("ETA") and then temporary authority ("TA") to a motor carrier, Eastern Moving & Storage Co., Inc. ("Eastern"), thus enabling Eastern to obtain a Department of Defense ("DOD") carriage contract. The Guardian Moving & Storage Company, Inc. ("Guardian"), a competitor for that contract, unsuccessfully contested Eastern's ETA/TA application before the ICC, and now petitions for review.

Although Eastern's interim authorities have expired, the instant petition is justiciable, because Guardian will continue to com-

pete for interstate carriage and contest the Commission's orders granting ETA and TA. On the merits, we decide that the ICC lacked any discernible basis for its orders. ETA and TA can only be awarded if the shipper has an "immediate need" for the applicant's service. Respondents do not argue that there were no permanently-licensed carriers available to execute the DOD contract: Guardian was a capable carrier with a permanent license, as respondents concede. Rather, they claim that DOD had a "competitive need" for Eastern's services. However, no evidence on the record of this case supports this contention. Thus, the petition for review is granted.

## I. BACKGROUND

A motor carrier generally requires license authority from the Interstate Commerce Commission for interstate commercial operation. *See* 49 U.S.C. § 10921 (1988). In order to deal with certain specified exigent circumstances, Congress has granted limited authority to the Commission to issue "temporary" and "emergency temporary" licenses:

> [T]he Commission ... may grant a motor carrier temporary authority to provide transportation to a place or in an area having no motor carrier capable of meeting the immediate needs of the place or area. Unless suspended or revoked, the Commission may grant the temporary authority for not more than 270 days....
>
> ....
>
> ... [T]he Commission ... may grant a motor carrier emergency temporary authority to provide transportation to a place or in an area having no motor carrier capable of meeting the immediate needs of the place or area if the Commission determines that, due to emergency conditions, there is not sufficient time to process an application for temporary authority.... Unless suspended or revoked, the Commission may grant the emergency temporary authority for not more than 30 days, and the Commission may extend such authority for a period of not more than 90 days....

49 U.S.C. § 10928 (1988). This provision, by its plain language, makes the shipper's "immediate need" a condition for ETA or TA. ICC regulations incorporate the immediate-need standard. *See* 49 C.F.R. § 1162.4(b) (1990).

In the instant case, the Commission awarded ETA and TA to Eastern over the protests of Guardian, a permanently-licensed competitor. From the record at hand, it appears that the facts are as follows. The Department of Defense uses a private carrier to move the household goods of DOD employees at Fort Meade, Maryland, who are moving locally. In the past, DOD has not required the Fort Meade carrier to have ICC authority, because most of the shipments were inside Maryland. In late November, 1990, however, this policy was changed. Eastern held the 1990 Fort Meade contract and was preparing a bid for 1991, but lacked ICC authority; on December 10, 1990, Eastern applied to the ICC's Regional Motor Carrier Board for ETA and TA, as well as permanent authority.

Eastern's application to the ICC contained no evidence that DOD had an "immediate need" for its services. The "Certificate of [Shipper] Support," signed by William Thornburg, a transportation officer at Fort Meade, described the Fort Meade situation as follows:

> Current contract expired December 31, 1990 and goods are scheduled to be moved daily.
>
> If service is not made available the Department of the Army would be unable to meet its daily need for the movement of Military Personal [sic] resulting from retirement, relocation, new recruits and availability of new housing.

Authority Application at 15, *reprinted in* Petitioner's Appendix ("App.") 5, 20. These statements explained why DOD needed *some* carrier for the Fort Meade contract. But since Guardian already had permanent ICC authority, and was apparently capable of executing the contract (respondents do not claim otherwise), Thorn-

burg's statements did not demonstrate that DOD needed *Eastern*.

Despite the absence of any real "immediate need," Eastern was granted ETA by telephone, sometime in December, and then TA by the Regional Motor Carrier Board's written decision issued January 15, 1991. This decision was conclusory: the Board simply stated that "[Eastern] seeks temporary authority and has shown that there is an immediate transportation need which cannot adequately be met by existing carriers." *Eastern Moving & Storage Co.*, ICC No. MC–238508 (sub E 1–TA) (decided Dec. 27, 1990), *reprinted in* App. 46, 46. The full Commission, reviewing the Board's decision, was equally laconic: "[Guardian's] petition [for review] is denied because it presents no facts that warrant a decision different from that reflected in the decision of the Regional Motor Carrier Board." *Eastern Moving & Storage Co.*, ICC No. MC–238508 (sub E 1–TA) (Apr. 1, 1991), *reprinted in* App. 69, 69.

Throughout the application process, Guardian protested to the ICC that there was no "immediate need" for Eastern's services. Guardian telephoned the Regional Motor Carrier Board before Eastern received ETA, and told the Board that a permanently-licensed carrier (Guardian) could carry out the Fort Meade contract. This contention was then repeated in various written submissions to the Board and ultimately the full Commission. *See* Appeal of ETA Grant and Protest of TA Application (Dec. 26, 1990), *reprinted in* App. 24; Supplement to Appeal of ETA Grant and Supplement to Protest of TA Application (Jan. 3, 1991), *reprinted in* App. 36; Appeal from TA Decision (Jan. 29, 1991), *reprinted in* App. 47. Along with one submission, Guardian provided a letter by Ernest Dilworth, a contracting officer at Fort Meade, in which Dilworth clarified the meaning of DOD's "Certificate of Support" attached to Eastern's application. According to Dilworth, DOD had *not* meant that Fort Meade's goods could not be moved without Eastern.

Mr. Thornburg [who had signed the Certificate] was contacted about this statement [describing DOD's "immediate need"] and asked why did he state this when there are existing carriers to provide support. Mr. Thornburg indicated that [his] statement referred to the consequences if [the Fort Meade contract] was not awarded[:] the Department of the Army would be unable to meet the needs for movement of Military Personal [sic]. It could be determined that Mr. Thornburg's statement was made out of context. Mr. Thornburg did not mean that an ICC authority [was] needed for Eastern to meet the Army's daily need for movement. It was also determined by the contracting officer that if Eastern was granted an emergency ICC because of Mr. Thornburg's statement, then Eastern's bid would be determined nonresponsible and award to the next low bidder would be proper.

Letter from Dilworth to Guardian of 12/28/90, at 2, *reprinted in* App. 42, 43. Eastern replied to Guardian's protests in two letters to the ICC. *See* Letter from Eastern to ICC of 1/07/91, *reprinted in* App. 44; Letter from Eastern to ICC of 2/12/91, *reprinted in* App. 65. Eastern alleged that Guardian was the only permanently-licensed competitor for the Fort Meade contract, but neither this nor anything else in the record indicated an "immediate need" on the part of DOD.

Meanwhile, Eastern, Guardian, and at least three other carriers submitted their bids to DOD. Eastern won the bidding, and received a one-year contract effective January 1, 1991, with an option to renew for two years. Guardian was the second-lowest bidder.

Guardian petitions this court to vacate the ICC orders granting Eastern ETA and TA. Guardian argues that these orders lacked evidentiary support. Although Eastern subsequently received permanent authority from the ICC, *see Eastern Moving & Storage Co.*, ICC No. MC 238508 (Mar. 20, 1991), *reprinted in* App. 71, Guardian does not challenge this decision.

## II. ANALYSIS

We grant the petition and vacate the grants of ETA and TA to Eastern. The

petition is justiciable: it presents a live controversy, and Guardian has Article III standing. On the merits, we decide that the ICC lacked evidence of an "immediate need" for Eastern's services.

## A. *Justiciability*

■ Although Eastern's ETA and TA have expired, we have jurisdiction to hear the instant petition. Petitioner claims to be a "repeat player" in ETA and TA proceedings.

> [T]he record shows that [Guardian] has, for the past 25 years or more, sought the Fort Meade pack-and-crate contract such as that involved here and was frequently the successful bidder. It is certainly likely to continue in the same vein in the future. Now that the Fort Meade Transportation Officer is signing ETA/TA Certifications of Support for unlicensed prospective bidders, [Guardian], as a protester, can reasonably be expected to be subjected at the ICC to the same action again.

Brief of Petitioner at 21–22 (citation omitted). This uncontested allegation resolves the mootness and standing problems.

In *Brink's, Inc. v. United States,* 613 F.2d 1079 (D.C.Cir.1979), we held that an expired TA fell in the "capable of repetition, yet evading review" exception to mootness. We heard a petition to vacate Wells Fargo's TA, even though Wells Fargo had already received permanent authority.

> [C]onsideration of the merits of this case is appropriate at this time, rather than a

dismissal for mootness which would leave … the motor carriers subject to the distinct possibility that they would never learn from the courts the parameters of the agency's temporary authority in the not unusual situation presented in this case.

*Id.* at 1083. Guardian, too, will concededly contest ETA and TA decisions in the future. Thus, *Brink's* is controlling on mootness.

■ *Brink's* did not address Article III standing, but rightly assumed that petitioner had standing to sue. A petitioner like Brink's or Guardian suffers "competitive harm"[1] by the prospect of unlawful ICC orders granting ETA or TA to its competitors; and this injury is redressed when we direct the ICC to refrain from issuing such orders. *See International Bhd. of Elec. Workers v. ICC,* 862 F.2d 330, 334 (D.C.Cir. 1988).

## B. *The Merits*

■ Neither the Regional Motor Carrier Board, nor the full Commission in reviewing the Board's decision, offered a meaningful explanation why Eastern obtained ETA and TA. However, we need not decide whether the ICC must articulate a reason for granting these authorities.[2] Nor need we establish whether a remand for further explanation would be appropriate.[3] Respondents offer a single rationale for the ICC orders here reviewed: that the ICC applied the "competitive need" standard articulated in *Brink's, Inc. v. United States,* 613 F.2d 1079 (D.C.Cir.1979). *See*

---

**1.** *Sea–Land Serv. v. Dole,* 723 F.2d 975, 978 (D.C.Cir.1983), *cert. denied,* 469 U.S. 824, 105 S.Ct. 103, 83 L.Ed.2d 47 (1984).

**2.** *See Independent U.S. Tanker Owners Comm. v. Lewis,* 690 F.2d 908, 922 (D.C.Cir.1982) ("[t]he distinct and steady trend of the courts has been to demand in informal adjudications … *some explanation* for agency action") (emphasis in original); *American Trading Transp. Co. v. United States,* 841 F.2d 421 (D.C.Cir.1988) (applying *Independent Tankers* to temporary order); *Humboldt Express v. ICC,* 567 F.2d 1134 (D.C.Cir.1977) (requiring ICC to articulate reasons in certificate-transfer adjudication, while recognizing that such adjudication should be expedited). *But see Georgia–Fla.–Ala. Transp.*

*Co. v. ICC,* 614 F.2d 1078, 1080 (5th Cir.1980) (Wisdom, J.) ("ICC proceedings on temporary authority applications need not comply with certain requirements of the Administrative Procedure Act, including the issuance of findings and conclusions") (internal quotation omitted).

**3.** *See Barrett Mobile Home Transp. v. ICC,* 567 F.2d 150, 153 (D.C.Cir.1977) (remanding in TA case where ICC's rationale was not "obvious"); *East Texas Motor Freight Lines v. United States,* 593 F.2d 691, 696 (5th Cir.1979) ("[o]nly if, after examination of the record [in a TA decision] and the law, the court were left without a clear understanding of the decision would remand be necessary").

Joint Brief of Respondents at 10–12. Assuming, *arguendo*, that this rationale is not a post-hoc rationalization, but rather the ICC's actual basis for granting ETA and TA to Eastern, *see, e.g., Environmental Defense Fund v. Costle*, 657 F.2d 275, 284–85 (D.C.Cir.1981), the rationale lacks evidentiary support. "[W]e must insist upon an administrative record [supporting a TA grant] that is not devoid of information underpinning the application," because "decisions unsupported by relevant data are simply arbitrary." *Barrett Mobile Home Transp. v. ICC*, 567 F.2d 150, 152 (D.C.Cir.1977) (internal quotation omitted).

■ Respondents do not argue that DOD had a *physical need* for Eastern's services, but rather concede that Guardian was permanently licensed and capable of performing the Fort Meade contract. Instead, respondents point to *Brink's*, which established that "the mere existence of other carriers physically capable of driving trucks in an area does not preclude a grant of temporary authority," if "competitive considerations reach the exigent and compelling plane." 613 F.2d at 1083, 1085. Whatever the appropriate evidentiary standard for reviewing the TA and ETA decisions in this case—whether we demand "substantial evidence" or "some evidence"[4]—that standard is not met. There is no evidence at all that DOD had the kind of "competitive need" discussed in *Brink's*.

*Brink's* demanded an "exigent," "compelling," or "impelling" competitive need. 613 F.2d at 1085–86. Temporary authority for a competing carrier was justified there because the competitor's bid would save the shipper almost a million dollars.

Our general conclusion—from the statutory text, taken together with the legislative and administrative history—is that the Commission can legally take account of a competitive need where that factor creates for the shipper an exigent, immediate need for the applicant's service in order to gain or save a substantial sum. *Id.* at 1087. In this case, however, DOD submitted no evidence supporting Eastern, other than the unhelpful certificate signed by Thornburg. Thus, there is no evidence in the record before this court that DOD had any "competitive need," substantial or otherwise. Nor do respondents suggest that any such evidence was relied upon by the ICC. Rather, respondents implicitly concede that the ICC had no evidence at all to support a "competitive need" on the part of DOD. *See* Joint Brief of Respondents at 12–14. Assuming, *arguendo*, that the ICC rationale for awarding Eastern ETA and TA was "competitive need" as per *Brink's*, this rationale was wholly unsupported.[5]

### C. *Remedy*

■ Where an agency lacks evidentiary support for an order, it is sometimes appropriate to vacate the order and remand for further investigation. *See, e.g., Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 338 (D.C.Cir.1989); *Camp v. Pitts*, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). Here, however, the ICC's orders have expired. In *American Trading Transportation Company v. United States*, 841 F.2d 421 (D.C.Cir.1988), we noted "[t]he atypical posture of requests to review short-term agency orders 'capable of repetition,'" and "decline[d] to remand [to the agency] where that disposition would serve no useful purpose." *Id.* at 426. Thus, we vacate Eastern's interim authorities, and declare that it is the ICC's obligation to conform to the specific requirements of 49 U.S.C. § 10928 in all fu-

---

4. We generally review ETA and TA decisions for "substantial evidence." *See Cross–Sound Ferry Servs. v. ICC*, 873 F.2d 395, 401 (D.C.Cir.1989). However, the parties have assumed that "some evidence" is the appropriate standard. *See* Brief of Petitioner at 24; Joint Brief of Respondents at 9. They rely on Fifth Circuit case law, *see, e.g., Georgia–Fla.–Ala. Transp. Co. v. ICC*, 614 F.2d 1078, 1080 (5th Cir.1980).

5. We do not decide whether the ICC can set a different standard for "competitive need" under 49 U.S.C. § 10928 than this court established in *Brink's*. There have been subsequent amendments to related U.S. Code sections, and the agency's interpretive authority may have been enhanced by *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In this case, however, respondents claim that *Brink's* was applied, not a different standard.

ture decisions on applications for ETA and TA.[6]

### III. CONCLUSION

For the reasons stated in this opinion, we find that the ICC should not have ordered ETA and then TA for Eastern. The petition for review is granted, and the ICC's orders are vacated.

6. We express no opinion as to further relief the ICC may provide Guardian.