**GUARDIAN MOVING & STORAGE CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–303C.

United States Court of Federal Claims.

Aug. 5, 1994.

Stephen J. Dunn, Towson, MD, for plaintiff.

Domenique Kirchner, with whom were Asst. Atty. Gen. Frank W. Hunger, David M. Cohen, Director, and Sharon Y. Eubanks, Asst. Director, Washington, DC, for defendant. Major Frederick Kennedy and James

C. Wagner, U.S. Dept. of the Army, of counsel.

## OPINION

ANDEWELT, Judge.

### I.

■ In this government contract action brought pursuant to the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613, plaintiff, Guardian Moving & Storage Co., Inc., seeks to recover approximately $18,000 in bid preparation costs it incurred in preparing an unsuccessful bid proposal for a Department of Defense (DOD) contract. The contract in issue covered the interstate transportation of household goods of DOD employees based at Fort Meade, Maryland, during 1991. DOD awarded the contract to the low bidder, Eastern Moving & Storage Co., Inc. (Eastern). Plaintiff contends that the contracting officer should have rejected Eastern's bid and awarded the contract to plaintiff, the second low bidder. Plaintiff alleges that Eastern's bid was not responsive to the requirements of the bid solicitation and that Eastern was not a responsible bidder. When the United States accepts a bid in response to a solicitation, it enters into an implied-in-fact agreement to consider the bid fairly and honestly. *Heyer Products Co. v. United States,* 135 Ct.Cl. 63, 69, 140 F.Supp. 409 (1956). If the United States breaches this obligation, the unsuccessful bidder is normally entitled to recover its bid preparation costs. *Id.*

This action is presently before the court on defendant's motion for summary judgment. For the reasons set forth below, defendant's motion is granted.

### II.

Plaintiff's criticism of the contracting officer's award to Eastern focuses on the regulatory requirements of the Interstate Commerce Commission (ICC). Pursuant to 49 U.S.C. § 10921, a carrier must obtain authorization from the ICC for the interstate transportation of goods. The ICC can grant emergency temporary authority and temporary authority to a carrier, but only if there is no other carrier capable of meeting the immediate transportation needs of the area.

49 U.S.C. § 10928. The contract solicitation herein defined the contract area of performance and required the contractor to ship goods "beyond the contract area of performance, not to exceed 50 miles." The contract shipping area included all or portions of the District of Columbia and the states of Maryland, Virginia, West Virginia, and Delaware. Consequently, the contract required ICC authorization for shipment to these areas.

Amendment 0002 of the solicitation, issued in response to plaintiff's request for clarification of the solicitation, stated that "[i]f [a prospective contractor] indicates that he/she does not hold authorization for interstate transportation for [the contract work], his/her bid will be rendered nonresponsive." Prior to award of the contract, Eastern submitted an application to the ICC requesting permanent authority, temporary authority, and emergency temporary authority for the entire contract shipping area except West Virginia. The ICC granted Eastern emergency temporary authority by telephone and later granted Eastern temporary authority. Although Eastern did not include West Virginia in its application, the ICC included West Virginia in its grant of temporary authority.

After bid opening but before contract award, plaintiff notified the contracting officer of its belief that the ICC had improperly granted Eastern emergency temporary authority, and that Eastern had not requested temporary authority for West Virginia. Thereafter, in December 27, 1990, letter, Eastern advised the contracting officer that it had in fact received ICC authority which included West Virginia. In a December 28, 1990, letter, the contracting officer notified plaintiff that he had contacted the ICC and had spoken to Marsha Archibald, Transportation Specialist, who confirmed that Eastern had been granted temporary authority for up to 120 days, and that there was no reason to believe that Eastern would not ultimately obtain permanent authority. On that same day, after determining that Eastern's bid was responsive and that Eastern was a responsible bidder, the contracting officer awarded Eastern the contract.

On January 3, 1991, plaintiff filed a timely formal protest with the contracting officer alleging that Eastern lacked authority to operate in West Virginia and therefore had not submitted a responsive bid. The contracting officer denied plaintiff's protest and noted that the protest involved Eastern's responsibility rather than responsiveness. In denying the protest, the contracting officer found that the contract would not require services in West Virginia, and in any event, that "responsibility determinations have been approved when necessary licenses and permits were not anticipated until after the award."

Plaintiff filed several more protests, none of which were timely, and ultimately filed a petition with the ICC requesting reconsideration of its decision to grant Eastern temporary authority. Before denying plaintiff's petition, the ICC granted Eastern permanent authority to operate within the contract area. (The record does not indicate whether the permanent authority included West Virginia.) Upon plaintiff's appeal, on January 14, 1992, the United States Court of Appeals for the District of Columbia Circuit vacated the ICC's award of emergency temporary authority and temporary authority as inconsistent with ICC regulations. *Guardian Moving & Storage Co. v. ICC,* 952 F.2d 1428 (D.C.Cir.1992). The court, however, did not overturn the ICC's grant of permanent authority. The court reached the issue of the validity of the prior temporary grants because the court was concerned that unless it clarified the law, the ICC would continue to disregard its own regulations. *Id.*

### III.

■ To recover its bid preparation costs, plaintiff must show that the government breached it obligation to consider plaintiff's bid fairly and honestly. Plaintiff must show that the contracting officer acted in an arbitrary and capricious manner when he determined that Eastern's bid was responsive and that Eastern was a responsible bidder. *See National Forge Co. v. United States,* 779 F.2d 665, 667 (Fed.Cir.1985); *Keko Industries, Inc. v. United States,* 192 Ct.Cl. 773, 782, 428 F.2d 1233, 1237 (1970). A showing of simple negligence is not enough to estab-

lish that the government's conduct was arbitrary and capricious. Rather, plaintiff must show that the contracting officer's decision was "irrational or totally lacking in reason." *Keko Industries, Inc. v. United States,* 203 Ct.Cl. 566, 579, 492 F.2d 1200, 1206 (1974).

A grant of summary judgement is appropriate only where there is no genuine issue of material fact (*i.e.,* a fact that might affect the outcome of the suit) and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. Where the moving party has successfully carried its burden, the nonmovant cannot rest on general denials, but must present sufficient countering evidence as to create a genuine factual dispute. RCFC 56(g); *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.Cir.1987).

### IV.

■ The issue of responsiveness turns on an inquiry into whether the bidder agreed to perform the work in the precise manner requested by the solicitation. Determinations of responsiveness are made at the time of bid opening. *Honeywell, Inc. v. United States,* 870 F.2d 644, 648–49 (Fed.Cir.1989). Federal Acquisition Regulation (FAR) 14.301, 48 C.F.R. § 14.301, governs responsiveness and provides, in pertinent part:

(a) To be considered for award, a bid must comply in all material respects with the invitation for bids. Such compliance enables bidders to stand on an equal footing and maintain the integrity of the sealed bidding system.

Paragraph K.29 of the instant solicitation, a provision that FAR 52.247–2 requires government agencies to include in all contracts involving regulated interstate carriers, states: "The offeror certifies that the offeror does /__/, does not /__/, hold authorization from the Interstate Commerce Commission or other cognizant regulatory body." In its bid, Eastern marked "does" and thereby complied with the pertinent requirement of the solicitation. Such an indication of autho-

rization also satisfied the requirements of Amendment 0002, which states: "If the offeror indicates that he/she does not hold authorization for interstate transportation for [the contract work], his/her bid will be rendered nonresponsive." Eastern's offer, therefore, complied in all material respects with the terms of the solicitation, and the contracting officer was neither arbitrary nor capricious in determining Eastern's bid to be responsive.

## V.

■ "Responsibility" addresses a bidder's ability to satisfy its contractual commitments presented in its responsive bid. *VMS Hotel Partners v. United States*, 30 Fed.Cl. 512 (1994). FAR 9.103(a) requires that "[p]urchases shall be made from, and contracts shall be awarded to, responsible prospective contractors only." FAR 9.104–1 sets forth the general standards for responsibility, and includes consideration of factors such as adequate financial resources, the ability to comply with the contract delivery schedule, and a satisfactory performance record.[1] Section 9.104–1(g) requires that a prospective contractor "[b]e otherwise qualified and eligible to receive an award under applicable laws and regulations."

Herein, plaintiff argues that the contracting officer's responsibility determination was erroneous for two reasons. First, plaintiff alleges that the contracting officer did not act reasonably in relying upon Eastern's temporary authority given plaintiff's warnings that the ICC had improperly granted such authority. Second, plaintiff alleges that the contracting officer acted unreasonably in

awarding the contract given his knowledge that Eastern had never requested authority to operate in West Virginia.

## A.

■ Plaintiff contends that the contracting officer should not have relied upon the grant of temporary authority, which the contracting officer had been warned was invalid, and should have made further inquiry into the propriety of such authority. Plaintiff argues that had the contracting officer made such an inquiry, he would have determined, like the Court of Appeals eventually did, that the grant of temporary authority was improper.

The contracting officer herein did not merely rely upon Eastern's assurances as to ICC certification contained in Paragraph K.29 of its bid, or even upon the ICC document granting such authority. Instead, as part of his inquiry into whether Eastern was a responsible bidder, the contracting officer contacted the ICC directly. Such action was appropriate under 48 C.F.R. § 9.015–1(c)(5), which provides that the contracting officer should use "sources such as . . . Government agencies" in making determinations of responsibility.

While a DOD contracting officer has expertise in the procurement regulations of his or her agency, he or she should not be held to expertise in the regulations of other agencies such as the ICC. When confronted with a question of the validity of an ICC certification, the contracting officer herein consulted an appropriate source of expertise, an ICC specialist, and received assurances that the ICC had granted Eastern temporary authori-

---

1. 48 C.F.R. § 9.104–1 provides:
   To be determined responsible, a prospective contractor must—
   (a) Have adequate financial resources to perform the contract, or the ability to obtain them (see 9.104–3(b));
   (b) Be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments;
   (c) Have a satisfactory performance record (see 9.104–3(c));
   (d) Have a satisfactory record of integrity and business ethics;
   (e) Have the necessary organization, experience, accounting and operational controls, and

technical skills, or the ability to obtain them (including, as appropriate, such elements as production control procedures, property control systems, quality assurance measures, and safety programs applicable to materials to be produced or services to be performed by the prospective contractor and subcontractors) (see 9.104–3(b));
   (f) Have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them (see 9.104–3(b)); and
   (g) Be otherwise qualified and eligible to receive an award under applicable laws and regulations.

ty and had no reason to believe that Eastern would not ultimately obtain permanent authority. The contracting officer's reliance on an ICC employee's interpretation of ICC regulations is reasonable. The fact that the Court of Appeals later disagreed with the ICC's actions does not render the contracting officer's action arbitrary or capricious.

### B.

Plaintiff informed the contracting officer within the 10–day protest period required by FAR 33.103(b)(2)[2] that notwithstanding the ICC's inclusion of West Virginia in its grant of temporary authority, Eastern had never requested such authority. Plaintiff argues that based on its notice to the contracting officer of this defect, the contracting officer should have determined Eastern nonresponsible. In an affidavit, the contracting officer provided two independent reasons why he found Eastern responsible. First, the contracting officer noted that DOD did not anticipate any moves in West Virginia. This ground, however, is potentially suspect. It is at least possible that such a change in the contract requirements could have caused competitive prejudice. If such prejudice resulted, it may have constituted a compelling reason for DOD to cancel and resubmit the solicitation to reflect the fact that authority to operate in West Virginia was unnecessary. See 48 C.F.R. § 14.04–1 (requiring a compelling reason to cancel a contract after bid opening).

The second rationale of the contracting officer has more obvious merit. In his affidavit, the contracting officer stated that he believed "Eastern had made a clerical error in omitting West Virginia from its application with ICC, and [he] had no reason to believe that Eastern could not obtain authority for moves in West Virginia, since it had obtained such authority for other states." This ground for finding Eastern responsible notwithstanding the possible absence of proper authority for West Virginia appears reasonable. While a responsibility determination is made at the time of contract award, it is not necessary that a bidder have all licenses and authorizations required to perform the contract work at that time. It is sufficient if the licenses can be secured prior to contract performance. See John Cibinic, Jr., and Ralph C. Nash, Jr., *Formation of Government Contracts* 214 (2d ed. 1986) (citing 46 Comp.Gen. 326 (1966); Impact Instrumentation, Inc., Comp.Gen.Dec. B–217291, 85–1 CPD ¶ 240 (1985)). Here, the contracting officer reasonably believed that Eastern could secure the necessary ICC authorization in time to provide the contract services. In its response to defendant's motion for summary judgment, plaintiff did not present any evidence to refute the contracting officer's affidavit.

As the moving party, defendant has satisfied its initial burden to show the absence of a dispute as to a material issue of fact, and plaintiff has failed in its response to demonstrate the existence of such a dispute. The undisputed facts in turn demand the conclusion that the contracting officer acted reasonably.

### Conclusion

For the reasons set forth above, the court finds that the contracting officer did not act in an arbitrary or capricious manner in determining that Eastern's bid was responsive and that Eastern was a responsible bidder. Because defendant has demonstrated the absence of a dispute as to any material fact, defendant's motion for summary judgment is granted. The Clerk of the Court shall enter judgment accordingly. No costs.

IT IS SO ORDERED.

---

2. Defendant agrees that it is appropriate for the court to consider issues raised in a timely protest when making a determination as to whether the agency breached its implied obligation to consider a bid fairly and honestly.