# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――

Argued April 26, 2021　　　　Decided June 15, 2021

No. 20-1181

THE NASDAQ STOCK MARKET LLC, ET AL.,
PETITIONERS

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

―――

Consolidated with 20-1192, 20-1231

―――

On Petitions for Review of an Order
of the Securities and Exchange Commission

―――

*Thomas G. Hungar* argued the cause for petitioners. On the briefs were *Paul S. Mishkin, Amir C. Tayrani, Joshua M. Wesneski, Paul E. Greenwalt III,* and *Michael K. Molzberger.*

*Tracey A. Hardin*, Assistant General Counsel, Securities and Exchange Commission, argued the cause for respondent. With her on the briefs were *Michael A. Conley*, Acting General Counsel, and *Martin Totaro*, Senior Counsel.

*Keith Bradley* and *Jeffrey Walker* were on the brief for *amici curiae* Securities Industry and Financial Markets Association, Inc., et al. in support of respondent.

*Robert A. Skinner, Douglas H. Hallward-Driemeier,* and *Jonathan R. Ference-Burke* were on the brief for *amicus curiae* Investment Company Institute in support of respondent.

Before: ROGERS and TATEL, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Modern stock exchanges transmit data about trades and prices at lightning-fast speeds. But as this case demonstrates, the administrative process demands considerably more patience.

Several stock exchanges challenge a Securities and Exchange Commission (SEC) order directing them to submit a proposal to replace three plans that govern the dissemination of certain types of data with a single, consolidated plan. Specifically, they challenge provisions of the order requiring them to include three features relating to plan governance. The Commission, however, has yet to decide whether the challenged features will make it into the new plan, and section 25(a) of the Securities Exchange Act ("Exchange Act") confers authority on the courts of appeals to review only "final order[s]." 15 U.S.C. § 78y(a)(1). Accordingly, we lack jurisdiction and so dismiss the petitions.

## I.

Section 11A of the Exchange Act empowers the Commission to, "by rule or order, [] authorize or require self-regulatory organizations," including stock exchanges, "to act

jointly with respect to matters as to which they share authority under this chapter in planning, developing, operating, or regulating a national market system," known as an NMS. 15 U.S.C. § 78k-1(a)(3)(B); *see also id.* § 78c(a)(26) ("The term 'self-regulatory organization' means any national securities exchange, registered securities association, or registered clearing agency."). Commission regulations further provide that "[e]very national securities exchange on which an NMS stock is traded and national securities association shall act jointly pursuant to one or more effective national market system plans to disseminate consolidated information, including a national best bid and national best offer, on quotations for and transactions in NMS stocks." 17 C.F.R. § 242.603(b). And although "[a]ny two or more self-regulatory organizations, acting jointly, may file a national market system plan or may propose an amendment to an effective national market system plan," no such proposal, subject to limited exceptions, "shall become effective unless approved by the Commission." *Id.* § 242.608(a)(1), (b)(1). Over the course of several decades, the Commission has exercised this authority to approve three Equity Data Plans that now govern the dissemination of certain types of quotation and transaction information for publicly traded equity securities.

Setting the stage for the issue before us, on January 14, 2020, the Commission published a notice soliciting comments on whether to issue a proposed order that "would require the participants in the [current] Equity Data Plans to propose a single, new equity data plan." Notice of Proposed Order Directing the Exchanges and the Financial Industry Regulatory Authority To Submit a New National Market System Plan Regarding Consolidated Equity Market Data, 85 Fed. Reg. 2164, 2165 (Jan. 14, 2020). The Commission explained that should it promulgate such an order, the new plan "would be published for public comment," after which "the Commission

would consider whether to approve the New Consolidated Data Plan, with any changes or subject to such conditions as the Commission may deem necessary or appropriate." *Id.*

Four months later, the Commission published a modified version of the proposed order, referred to as the Governance Order. *See* Order Directing the Exchanges and the Financial Industry Regulatory Authority To Submit a New National Market System Plan Regarding Consolidated Equity Market Data ("Governance Order"), 85 Fed. Reg. 28,702 (May 13, 2020). Over the objections of several stock exchanges, the Commission required the forthcoming proposal to include, among other things, three specific features: (1) "voting representation" on the "New Consolidated Data Plan's operating committee" for certain non-exchange stakeholders; (2) a "voting rights" allocation that treats a group of affiliated exchanges as if it were one exchange; and (3) an "independent plan administrator" neither "owned [n]or controlled by a corporate entity that, either directly or via another subsidiary, offers for sale its own proprietary market data product for NMS stocks." *Id.* at 28,712, 28,714, 28,730.

Several stock exchanges filed petitions for review in our court, arguing that the Governance Order's inclusion of these three features violated section 11A, contravened Commission regulations, or was arbitrary and capricious. A few days later, they filed a motion asking the Commission to stay the Governance Order, which it promptly denied for several reasons, including that "the Governance Order d[id] not establish a New Consolidated Data Plan." Order Denying Stay, 85 Fed. Reg. 36,921, 36,921 (June 18, 2020). The exchanges then filed the required proposal, and briefing on their petitions for review proceeded. On October 13, the Commission published the proposal for comment, *see* Notice of Filing of a

National Market System Plan Regarding Consolidated Equity Market Data, 85 Fed. Reg. 64,565 (Oct. 13, 2020), and four months later, on January 15, 2021, it published an order "instituting proceedings . . . to determine whether to disapprove the [proposed plan]," Order Instituting Proceedings to Determine Whether To Approve or Disapprove a National Market System Plan Regarding Consolidated Equity Market Data ("Order Instituting Proceedings"), 86 Fed. Reg. 4142, 4142 (Jan. 15, 2021).

**II.**

Before considering the merits of the exchanges' challenge to the Governance Order, we may "determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). The only asserted basis for jurisdiction in this case, Exchange Act section 25(a), empowers courts "to review only final orders of the SEC." *Net Coalition v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013) (internal quotation marks omitted); *see* 15 U.S.C. § 78y(a)(1) ("A person aggrieved by a final order of the Commission entered pursuant to this title may obtain review of the order . . . by filing . . . a written petition requesting that the order be modified or set aside in whole or in part."). This requirement "allows the agency an opportunity to apply its expertise and correct its mistakes, [] avoids disrupting the agency's processes, and [] relieves the courts from having to engage in piecemeal review which is at the least inefficient and upon completion of the agency process might prove to have been unnecessary." *DRG Funding Corp. v. Secretary of HUD*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (internal quotation marks omitted). Concerned that the Governance Order may not be final, we instructed the parties to be prepared at oral argument to address our jurisdiction. *See Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (raising *sua sponte* whether the agency

decision under review was an "order" for purposes of Exchange Act section 25). Both sides also filed supplemental briefs, each arguing that the Governance Order was final.

In *Bennett v. Spear*, the Supreme Court explained that to be "final," an order must (1) "mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature[;]" and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." 520 U.S. 154, 177–78 (1997) (internal quotation marks omitted) (citations omitted). With respect to the first requirement, the exchanges argue that the three challenged plan elements "have not merely been proposed by the Commission[;]" rather, after a round of notice and comment, the Commission "ma[de] a final determination about the elements to be included in the New Consolidated Data Plan." Pet'rs' Suppl. Br. 2 (emphasis omitted). For its part, the Commission contends that the Governance Order represented the consummation of its decision-making process because it "determined that the challenged provisions . . . are reasonable and within [the Commission's] authority." Resp't's Suppl. Br. 2–3.

The Commission's notice and orders, however, are to the contrary. From the very outset, the Commission has made clear that the Governance Order was no more than a call for a proposal that would then be subject to further notice, comment, and revision.

Take the Governance Order itself. Responding to a comment that criticized it for "rel[ying] on cherry-picked opinions of self-interested market participants," the Commission stated that "the New Consolidated Data Plan submitted in response to this Order will itself be published for public comment prior to any Commission decision to

disapprove or to approve the plan with any changes or subject to any conditions the Commission deems necessary or appropriate after considering public comment." Governance Order, 85 Fed. Reg. at 28,705 (internal quotation marks omitted). In other words, the Commission had committed to no particular plan features and promised to address any alleged defects in its analysis following the forthcoming round of notice and comment.

The Commission made the same point in its order denying a stay. Calling the Governance Order the "first step toward establishing a new governance structure," the Commission accused the exchanges of "overstat[ing] the harm that [would] result from their compliance with the Governance Order," explaining that even after they submit the proposed plan, "interested parties will still be able to comment on [it], and the Commission will review the plan and may make changes or add conditions before issuing a subsequent order approving or disapproving a new plan." Order Denying Stay, 85 Fed. Reg. at 36,921–22.

Then, in its notice publishing the proposed plan, the Commission reiterated that whether it would include the challenged plan elements remained up for debate. It sought "comment on the proposed [] Plan" and expressly asked for feedback on "whether the proposal is consistent with the Act and the rules thereunder," as well as "whether the proposed [] Plan is appropriately structured[] and . . . appropriately drafted[] to support the [goals of section 11A]." Notice of Filing of a National Market System Plan Regarding Consolidated Equity Market Data, 85 Fed. Reg. at 64,567.

Finally, in its most recent order, the one in which it "institut[ed] proceedings" on whether to approve the proposed plan, Order Instituting Proceedings, 86 Fed. Reg. at 4142, the

Commission gave perhaps the clearest indication of the Governance Order's "tentative" nature, *Bennett*, 520 U.S. at 178. It "request[ed] that interested persons provide written submissions of their views, data, and arguments with respect to" a specific list of issues, "as well as *any* other concerns they may have with the proposals." Order Instituting Proceedings, 86 Fed. Reg. at 4143 (emphasis added). The Commission left absolutely no doubt about the tentative nature of its actions to date, stating that "[i]nstitution of proceedings does not indicate that the Commission has reached *any* conclusions with respect to *any* of the issues involved." Order Instituting Proceedings, 86 Fed. Reg. at 4142 (emphasis added).

Thus, at every critical turn, the Commission made clear that its decision making regarding the three challenged features remained unconsummated. Or in the words of *Bennett*, the Governance Order did not "mark the consummation of the agency's decisionmaking process[;]" rather, it was "merely tentative" and "interlocutory." 520 U.S. at 178 (internal quotation marks omitted). To be sure, Commission counsel now argues that the Governance Order is final, but "[p]ost hoc explanation by appellate counsel . . . is not an acceptable foundation for review of agency action." *American Trading Transportation Co. v. United States*, 841 F.2d 421, 424 (D.C. Cir. 1988). Critical for our purposes is what the *Commission* has said, and the Commission has repeatedly signaled that its thinking about the three challenged features is not final. This should come as no surprise to lead petitioner Nasdaq, which attached the exchanges' opening brief in this case to its comment on the proposed plan, writing that "[a]ll of the statements set forth in . . . the opening brief filed on behalf of Nasdaq and the other petitioners in the Court of Appeals . . . are incorporated herein by reference," and that "[f]or all of the reasons stated therein, the Commission should disapprove the proposed Plan." The Nasdaq Stock Market, LLC, Comment

Letter on the Notice of filing of a National Market System Plan Regarding Consolidated Equity Market Data (Nov. 12, 2020), http://www.sec.gov/comments/4-757/4757-8011769-225419.pdf. Why would Nasdaq have done that unless it believed, contrary to what it asserts here, that the Governance Order was not final?

The exchanges rely on *Domestic Securities, Inc. v. SEC*, where we found that an order stating that a new trade execution system called SuperMontage "be and hereby is approved" was final despite the fact that the order also "delayed the implementation of SuperMontage" until approval of an "Alternative Display Facility." 333 F.3d 239, 244, 246 (D.C. Cir. 2003) (internal quotation marks omitted). Although acknowledging "[t]he existence of this condition to SuperMontage's implementation," we explained that after the order's promulgation, the only remaining issue was "the timing of SuperMontage's implementation," and that "[t]here was no question that the substance of SuperMontage's trade execution rules . . . would remain the same and would ultimately be implemented." *Id.* at 246. Here, by contrast, the Commission never said anything remotely like "the three challenged features are hereby approved" or that they will "remain the same and ultimately be implemented." Quite to the contrary, the Commission has declared time and again that it has yet to make up its mind about any of the challenged provisions and that they all remain subject to notice, comment, and final resolution by the Commission.

The exchanges argue that the Governance Order is final because it required them "to file a *proposed* plan with the particular terms and conditions challenged by petitioners." Resp't's Suppl. Br. 3 (emphasis added); *see also* Pet'rs' Suppl. Br. 3 (arguing that the Governance Order was final because it "eliminated any discretion on behalf of petitioners as to

whether to include these features in a proposed NMS plan"). The Supreme Court rejected a similar attempt to redefine the scope of the finality inquiry in *FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980). In that case, an oil company sought review of an order finding "reason to believe" that the company was violating the Federal Trade Commission Act and instituting an adjudication against it. *Id.* at 241. Acknowledging that "the issuance of the complaint is definitive on the question whether the Commission avers reason to believe that the respondent to the complaint is violating the Act," the Court nonetheless concluded that the order was not final because it was not a "definitive statement of position" on the actual question before the agency, "whether [the oil company] violated the Act." *Id. Standard Oil* teaches that finality must be measured in relation to the agency's entire process, not just "one phase of the process." Resp't's Suppl. Br. 2 (internal quotation marks omitted). Thus, although the Governance Order was definitive on the question whether the three challenged plan elements had to be included in the proposal, it was not a "definitive statement of position" on the question the Commission had initiated proceedings to answer—whether the three features should be included in the eventual plan.

Because the Governance Order flunks the first element of the *Bennett* test, we need not address the second.

### III.

The exchanges are concerned that had they "waited until the Commission's approval of the New Consolidated Data Plan to file petitions for review," those petitions would have been "untimely." Pet'rs' Suppl. Br. 5. Given our conclusion that the Governance Order is not "final" within the meaning of Exchange Act section 25, the exchanges no longer face that

risk. 15 U.S.C. § 78y(a)(1). The petitions for review are dismissed.

*So ordered.*