**VMS HOTEL PARTNERS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–54C.

United States Court of Federal Claims.

March 7, 1994.

Robert M. Cambridge, Arlington, VA, for plaintiff.

Brian S. Smith, with whom were Asst. Atty. Gen. Frank W. Hunger, David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, Washington, DC, for defendant. Major Timothy J. Saviano and Lieutenant Colonel Robert Minor, of counsel.

*OPINION*

ANDEWELT, Judge.

In this action filed pursuant to 28 U.S.C. § 1491(a)(3), plaintiff, VMS Hotel Partners (VMS), the second low bidder on Solicitation No. DAKF57–93–B–0046 (the Solicitation), requests that this court enjoin the United States Department of the Army's (Army) imminent award of a government contract to the low bidder, Convention Marketing Services, Inc. (CMS). This action is presently before the court on the parties' cross-motions for summary judgment. Defendant has agreed to refrain from awarding any contract under the instant solicitation until this court resolves the parties' cross-motions. For the reasons set forth below, plaintiff's motion for summary judgment is denied, and defendant's cross-motion is granted.

I.

▮ Federal agencies generally are free to choose with whom they wish to contract and the courts will interfere with the government procurement process "only in extremely limited circumstances." *CACI, Inc.–Federal v. United States*, 719 F.2d 1567, 1581 (Fed.Cir.1983) (quoting *United States v. John C. Grimberg, Co.*, 702 F.2d 1362, 1372 (Fed.Cir.1983)). In a case filed prior to contract award, this court will enjoin award of the contract only where the contracting officer's impending award is arbitrary, capricious, or otherwise inconsistent with the law, *i.e.*, where there is no rational basis for the agency's action. *See, e.g., Honeywell, Inc. v. United States*, 870 F.2d 644, 647 (Fed.Cir.

1989) ("we conclude that the GAO decision was rational and that the Army did not act arbitrarily or capriciously"); *NKF Engineering, Inc. v. United States*, 805 F.2d 372, 376 (Fed.Cir.1986); *CACI*, 719 F.2d at 1573; *Keco Industries, Inc. v. United States*, 203 Ct.Cl. 566, 574–75, 492 F.2d 1200, 1203–04 (1974).

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Herein, there is no genuine dispute as to any material fact and, for the reasons set forth below, defendant is entitled to judgment as a matter of law.

II.

On August 12, 1993, the Army issued the Solicitation which covers the provision of meals, lodging, and transportation for "Armed Forces applicants/enlistees/processees" of the Military Entrance Processing Station (MEPS) in Oakland, California. The Solicitation provides that contract performance shall commence on October 1, 1993, and end on September 30, 1994, and contains options for the Army to extend the contract period for up to two years. Bids were opened on September 14, 1993, and CMS was the apparent low bidder. In its bid, under Paragraph K.9, entitled "Place of Performance—Sealed Bidding," CMS listed its intended place of contract performance as the Holiday Inn, Concord, California (Concord Holiday). CMS does not own any lodging facilities and planned to enter a subcontract with the Concord Holiday.

On December 2, 1993, after bid opening, CMS notified the contracting officer that it was changing its place of performance from the Concord Holiday to the Holiday Inn, Union City, California (Union City Holiday). Paragraph H.4 of the Solicitation requires that the bidder shall "comply with any applicable Federal ... laws ... and regulations in connection with this contract." The Concord Holiday's sprinkler system, however, was not adequate to comply with the Hotel and Motel Fire Safety Act of 1990, 15 U.S.C. §§ 2201–2227 (the Fire Act), which sets forth circum-

stances under which federal funds may be used to pay for the housing of government employees. Hence, if CMS intended to provide the contract services at the Concord Holiday without violating Paragraph H.4, additional sprinklers would have to be installed at the facility prior to contract performance. Instead, CMS chose to change the place of performance to the Union City Holiday, which already complied with the Fire Act. The contracting officer acquiesced to CMS's proposed change to the Union City Holiday.

Plaintiff initially filed a protest with the General Accounting Office (GAO) opposing the contracting officer's action, but the GAO agreed with the contracting officer's decision to permit CMS to change its place of performance. Plaintiff's motion for summary judgment herein rests on the contention that the contracting officer erred in permitting CMS to change its place of performance after bid opening and prior to contract award.

## III.

■ To understand the legal basis of plaintiff's argument, it is necessary first to understand the distinction between a contracting officer determination that a bid is "responsive" to the terms of the solicitation and a contracting officer determination that a bidder is "responsible" to perform the contract work covered in the solicitation. In the instant case, like the typical government contract case, the solicitation and related regulations, in effect, require the contracting officer to make separate determinations on the issues of "responsiveness" and "responsibility" prior to awarding the contract to an apparent low bidder.

As to "responsiveness," 48 C.F.R. § 14.301 provides:

Responsiveness of Bids

(a) To be considered for award, a bid must comply in all material respects with the invitation for bids. Such compliance enables bidders to stand on an equal footing and maintain the integrity of the sealed bidding system.

Hence, the contracting officer's "responsiveness" determination, *inter alia*, requires an identification of the Solicitation's requirements and a determination of whether the bidder agrees in its bid to conform in all material respects to such requirements. The contracting officer evaluates the bidder's "responsiveness" based upon the contents of the bid at bid opening. *Honeywell*, 870 F.2d at 648–49; *Toyo Menka Kaisha, Ltd. v. United States*, 220 Ct.Cl. 210, 597 F.2d 1371 (1979).

■ As to "responsibility," 48 C.F.R. § 9.103 provides that "[n]o purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility." The contracting officer's "responsibility" determination focuses on the bidder's ability to satisfy its contractual commitments encompassed within its "responsive" bid. *See* 48 C.F.R. § 9.104–1. *Inter alia*, to be "responsible," a contractor must have adequate financial resources; a satisfactory record of performance, integrity, and business ethics; and the necessary organization, experience, technical skills, and production facilities.[1] As to facilities, to be "responsible," a contractor must "[h]ave the necessary production . . . facilities, *or the ability to obtain them*" (emphasis added). Unlike with

---

1. 48 C.F.R. § 9.104–1 provides:
    To be determined responsible, a prospective contractor must—
    (a) Have adequate financial resources to perform the contract, or the ability to obtain them (see 9.104–3(b));
    (b) Be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments;
    (c) Have a satisfactory performance record (see 9.104–3(c));
    (d) Have a satisfactory record of integrity and business ethics;
    (e) Have the necessary organization, experience, accounting and operational controls, and

technical skills, or the ability to obtain them (including, as appropriate, such elements as production control procedures, property control systems, quality assurance measures, and safety programs applicable to materials to be produced or services to be performed by the prospective contractor and subcontractors) (see 9.104–3(b));
    (f) Have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them (see 9.104–3(b)); and
    (g) Be otherwise qualified and eligible to receive an award under applicable laws and regulations.

"responsiveness," in assessing the contractor's "responsibility," the contracting officer is not limited to the information contained in the bid when opened. Rather, the contracting officer may solicit and the contractor may supply additional information to demonstrate that the contractor is capable of performing the contract work. *See* 48 C.F.R. § 9.105–1.

### IV.

Plaintiff acknowledges that if CMS's designation of the place of performance in its bid raises exclusively an issue of "responsibility," then the contracting officer properly allowed CMS to change its place of performance from the Concord Holiday to the Union City Holiday. Plaintiff further acknowledges that the pertinent regulations anticipate that the place of contract performance ordinarily will involve exclusively an issue of "responsibility" and not of "responsiveness." In this regard, as described above, 48 C.F.R. § 9.104–1 lists the contractor's production facilities as an element in the "responsibility" determination and does not require that the contractor secure adequate production facilities prior to contract award, *i.e.*, to be "responsible" it is sufficient that the low bidder have "the ability *to obtain* [adequate production facilities]" (emphasis added).

Plaintiff contends, however, that the Army's inclusion of certain provisions in the Solicitation (Section 1.2, Paragraph H.4, and Paragraph K.9) rendered the place of performance an element of "responsiveness" and thus, precluded CMS from changing, after bid opening, its designated place of performance. In rejecting this contention and concluding that CMS properly could change its place of performance to the Union City Holiday after bid opening and prior to contract award, the contracting officer explained his position as follows:

4. The CMS bid was responsive. The proposed hotel was within the stipulated 25 mile radius, and did not take exception to any of the other requirements of the solicitation.

5. The Government is considering award to the apparent low bidder, CMS. CMS proposes to perform the contract by subcontracting their place of performance.

The inclusion in the solicitation of [Paragraph K.9] does not constitute a responsiveness issue. The prospective contractor's subcontracted place of performance is an issue of responsibility, not of responsiveness. . . .

In rejecting plaintiff's protest, the GAO agreed with the contracting officer and stated:

[T]here generally is nothing improper with a bidder's altering before award how it intends to perform by deciding to use a facility different from that originally identified in [Paragraph K.9 of the solicitation], so long as it complies with the [solicitation] requirements.

### V.

■ The contracting officer's analysis is correct. At bid opening, CMS's bid was "responsive" to the Solicitation. CMS's bid complied in all material respects with the requirements of the Solicitation, including the requirements of Section 1.2, Paragraph H.4, and Paragraph K.9. As to CMS's change in the place of performance, there is no provision in the Solicitation or the applicable regulations that precludes CMS or any other bidder who obtains the contracting officer's acquiescence from changing its designated place of performance after bid opening and prior to contract award. Because all bidders had the opportunity to make such a change, the contracting officer's decision to allow CMS to alter its place of performance did not put CMS in a better position than the other bidders and did not compromise the integrity of the sealed bidding process.

Turning to the three provisions of the Solicitation upon which plaintiff relies, Section 1.2 of the Solicitation requires that the contract services be provided at a site within a specified "area of consideration." Section 1.2 provides:

1.2 *Area of consideration:* Preferably within a 20 mile radius of the MEPS, BUT not to exceed 25 mile radius and no more than 25 driving miles along primary and secondary road networks (even if inside the 25 mile radius) from the MEPS. Additionally, lodging facilities on the western

side of the San Francisco Bay are excluded due to traffic considerations and fog conditions over the San Mateo Bridge, San Francisco—Oakland Bay Bride, Dunbarton Bridge and the San Rafael Bridge. The contractor's establishment must not be located in a known drug or vice area, or an area of poor reputation.

Clearly, by adding a specific requirement as to the geographic area in which contract performance must take place, Section 1.2 makes a bidder's acquiescence in that requirement an element of "responsiveness," *i.e.*, a bidder could not comply with the material requirements of the Solicitation unless it agrees to perform the contract work at a facility located within the "area of consideration." CMS's bid satisfied this requirement and the other material requirements of Section 1.2. CMS acknowledged in its bid that "[a]ll offers [*i.e.*, bids] are subject to all terms and conditions contained in th[e] solicitation." CMS thereby indicated its commitment to perform the contract work within the "area of consideration" by signing the bid without taking any exception in words or effect to the requirements in Section 1.2. Moreover, CMS also indicated such an intent in its bid by offering to perform the contract work at the Concord Holiday, a facility which is in fact located within the "area of consideration." Section 1.2 does not require performance at a particular facility within the "area of consideration" but rather merely demands performance at any facility within the broad geographic "area of consideration." Hence, allowing CMS to change its place of performance from one facility within the "area of consideration" to another facility within that specified area was in no way inconsistent with the requirements of Section 1.2.

Next, Paragraph H.4 of the Solicitation, entitled "Permits and Licenses," provides:

Unless otherwise specified in this contract, the contractor shall obtain any necessary licenses and permits, give all notices, and comply with any applicable Federal, State, County, and municipal laws, codes, and regulations in connection with this contract.

The Concord Holiday's alleged noncompliance with applicable federal laws at bid opening did not prevent CMS's bid from being "responsive" to the Solicitation. Paragraph H.4 does not require the securing of necessary permits and compliance with applicable federal law at the time of bid opening or even at the time of contract award. Rather, by providing that "the contractor shall ... comply with any applicable Federal ... laws ... *in connection with this contract*" (emphasis added), Paragraph H.4, in effect, requires only that a bidder commit itself in its bid to complying with federal law during contract performance. By signing its bid without taking any exception in words or effect to the requirements of Paragraph H.4, CMS indicated its commitment to comply with those requirements. Paragraph H.4, like Section 1.2, does not require CMS to use a particular place of performance, and therefore, CMS's change of its designated place of performance was not inconsistent with any requirement in Paragraph H.4.

This leaves plaintiff with only Paragraph K.9 of the Solicitation on which to base its argument. Paragraph K.9, which incorporates 48 C.F.R. § 52.214–14 into the Solicitation, unambiguously requires a contractor to state a place of performance in its bid. Paragraph K.9 provides:

(a) The bidder, in the performance of any contract resulting from this solicitation, /__/ intends, /__/ does not intend [check applicable box] to use one or more plants or facilities located at a different address from the address of the bidder as indicated in this bid.

(b) If the bidder checks "intends" in paragraph (a) above, it shall insert in the spaces provided below the required information:

| Place of Performance (Street Address, City, County, State, Zip Code) | Name and Address of Owner and Operator of the Plant or Facility if Other than Bidder |
|---|---|
| | |
| | |

Paragraph K.9 does not require the designation of a particular place of performance but rather merely requires that the bidder designate its intended place of performance. CMS was responsive to this requirement by designating its intended place of performance in its bid. As to. CMS later revising that designation, *nothing in Paragraph K.9 precludes CMS or any other bidder from changing its original designation subsequent to bid opening, i.e.,* Paragraph K.9 does not itself oblige the bidder necessarily to use the designated place of performance when performing the contract work. Indeed, the Solicitation anticipates that contract services may be provided at a different site from the site originally listed in the bid. Section 1.3 of the Solicitation specifically permits a contractor, with the acquiescence of the contracting officer, to change the site designated for performance in the contract. Section 1.3 provides:

> 1.3 *Subcontracting:* The contractor shall furnish meals and lodgings from his/her establishment, or at the location specified in the contract. Subcontracting to any other establishment or any other location shall be permitted only with the prior written consent of the Contracting Officer or his/her designated representative. Contractor must provide name and location of subcontractor. Government will ONLY pay the awarded contract cost even when the prime contractor subcontracts any of the services.

The question therefore becomes what is the purpose behind Paragraph K.9 if not to limit the bidder to the place of performance identified in its bid. Paragraph K.9 was included in the instant solicitation pursuant to 48 C.F.R. § 14.201–6(h), which provides that the "contracting officer shall insert the provision at 52.214–14, Place of Performance—Sealed Bids, in invitations for bids except those in which the place of performance is specified by the Government." By requiring the inclusion of Paragraph K.9 only in solicitations where the place of performance is unspecified and left to the bidder's discretion, Section 14.201–6(h) would seem to be directed at facilitating the contracting officer's "responsibility" decision, 48 C.F.R. § 9.105–1, *i.e.,* requiring a contractor to list

its intended place of performance in its bid would give the contracting officer a useful head start in evaluating the bidder's capability to perform the contract work, 48 C.F.R. § 9.104–1(f).

Plaintiff argues that CMS cannot modify its Paragraph K.9 designation of the Concord Holiday because that designation was the only indication of CMS's intent to perform the contract work within the Section 1.2 "area of consideration" and hence, was integral to the contracting officer's conclusion that the bid was "responsive." But as discussed above, CMS's bid also may be considered "responsive" to the Section 1.2 "area of consideration" requirement because CMS signed its bid without taking any exception in words or effect to that requirement. In any event, even assuming CMS's designation of the Concord Holiday as the place of performance was significant to the contracting officer's conclusion that CMS's bid was "responsive" to the solicitation's "area of consideration" requirement, this would not prevent CMS from later changing its designated place of performance. As described above, the evaluation of an apparent low bid requires two pertinent and distinct determinations. A contracting officer bases a "responsiveness" determination on the contents of a bid at bid opening, but the contracting officer may rely upon information secured after bid opening to determine "responsibility." Herein, CMS's bid was "responsive" at bid opening because, as described above, CMS committed itself to satisfying all of the requirements contained in the Solicitation, including a place of performance within the specified "area of consideration." On the distinct issue of "responsibility," the Solicitation and related regulations generally anticipate the possibility that the place of performance may change during the course of the "responsibility" evaluation. CMS, in an apparent effort to lower its cost of contract performance or perhaps to address possible "responsibility" concerns, elected to make such a change in place of performance after bid opening. This change raised only an issue of "responsibility." Replacing one facility within the Section 1.2 "area of consideration" with another facil-

ity within that area could not in any way render the bid "nonresponsive." At all times, CMS remained obliged to perform the contract work at the bid price and to perform the work at a facility that complied with federal laws and that was located within the geographic "area of consideration." Moreover, there could be no issue of disparate treatment among bidders because any other bidder similarly could have requested to change its designated place of performance subsequent to bid opening, and hence, all were on equal footing.

## VI.

 Next, plaintiff argues that the contracting officer's interpretation of the Solicitation is unsound because it gave CMS an impermissible "two bites at the apple" in that CMS could have waited to determine whether it would affirm or withdraw its bid after it became aware of its competitors' bids. Plaintiff contends that by allowing CMS to submit a bid that did not initially satisfy Paragraph H.4 of the Solicitation and then to change its place of performance after bid opening, defendant gave CMS the option either to preserve its bid by securing a facility that satisfied Paragraph H.4, or, in the alternative, to terminate its bid, penalty free, by not finding a suitable facility.

But the contracting officer's interpretation does not give CMS such an option. As described above, CMS's bid was "responsive." The only other conclusion necessary to award the contract to CMS is one of "responsibility." A determination of "responsibility" is based on objective criteria as set forth in 48 C.F.R. § 9.104–1. With respect to production facilities, a bidder is "responsible" if the bidder has the "ability to obtain" adequate production facilities. Therefore, so long as an objective assessment of the facts leads the contracting officer to conclude that CMS had ability to obtain adequate facilities, the contracting officer could have (and should

have) held CMS to its low bid even if CMS preferred to terminate its bid. Hence, contrary to plaintiff's assertion, CMS could not have avoided performing the contract work at its bid price simply by contending that it could not find a suitable facility.[2]

Next, plaintiff argues that permitting CMS to change its designated place of performance after CMS was determined to be the low bidder would improperly enable CMS to "shop" for lower prices from other subcontractors. Plaintiff argues that CMS could apply greater negotiating leverage because it could almost guarantee that the facility of its choice would receive the contract work. But even assuming that CMS's position as low bidder produced some additional leverage, every bidder had an opportunity to be the low bidder and secure such an advantage. Hence, allowing CMS to "shop" for a subcontractor would not compromise the integrity of the bidding process or give CMS any advantage that was not potentially available to any other bidder.

### Conclusion

For the reasons set forth above, the court finds that the contracting officer acted reasonably and otherwise consistent with the law when he concluded that CMS's bid was "responsive" to the Solicitation, that the particular place of performance within the designated "area of consideration" is a "responsibility" issue, and that CMS could change its specified place of performance prior to contract award. Hence, this court will not disturb the imminent award to CMS. Accordingly, plaintiff's motion for summary judgment is denied, and defendant's cross-motion is granted.

IT IS SO ORDERED.

---

**2.** must be recognized that the risk plaintiff perceives, that a low bidder may try to manipulate the contracting officer so as to escape its bid, is inherent in all situations where a "responsibility" determination is required after bid opening. Because a bid does not necessarily contain all information required for a "responsibility" determination, some exchange of information after bid opening may be required, and the low bidder

may try to skew those communications to avoid being awarded the contract. Because that risk is inherent each and every time a "responsibility" determination is made, the existence herein of such a risk hardly compels a conclusion that in this particular case the place of performance raises an issue of "responsiveness" rather than, as is typical, an issue of "responsibility."